IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BOBBY LEE HILLMAN**,<br><br>  Petitioner,<br><br> v.<br><br>**MARK NOOTH**,<br><br>  Respondent. | Case No. 2:15-cv-656-SI<br><br>**OPINION AND ORDER** |

Anthony D. Bornstein, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, Oregon 97204. Of Attorneys for Petitioner.

Ellen F. Rosenblum, Attorney General, and Nick M. Kallstrom, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem, Oregon 97301. Of Attorneys for Respondent.

**Michael H. Simon, District Judge.**

  Bobby Lee Hillman ("Petitioner") seeks habeas corpus relief in federal court claiming that he was denied due process of law under the Fourteenth Amendment of the United States Constitution because his conviction for kidnapping rests on false testimony. In support, Petitioner submits an affidavit from Jasmine Hill, the victim in the kidnapping offense, that seeks to retract her trial testimony, which she now asserts was false. For the reasons below, the petition for habeas corpus is denied.

PAGE 1 – OPINION AND ORDER

## STANDARDS

Ordinarily, a federal court reviewing a petition for habeas corpus under 28 U.S.C. § 2254 may only consider claims that have "been properly exhausted and [are] not procedurally barred." *Cockett v. Ray*, 333 F.3d 938, 941 (9th Cir. 2003). "To exhaust a claim, a petitioner must fairly present a federal claim to the state courts, which requires that the petitioner present 'both the operative facts and the federal legal theory on which the claim is based." *Id.* at 942 (quoting *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003)). Any claims not first presented in state court are procedurally defaulted.

"A federal habeas petitioner can overcome a procedural default . . . by demonstrating actual innocence of the crime underlying his conviction." *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014). "[T]he Supreme Court has long recognized that in a 'narrow class of cases . . . implicating a fundamental miscarriage of justice,' federal courts may hear the merits of a habeas petition despite an otherwise applicable procedural bar." *Larsen v. Soto*, 742 F.3d 1083, 1088 (9th Cir. 2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995)). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id*. (quoting *House v. Bell*, 547 U.S. 518, 536-37 (2006)).

## BACKGROUND

The Court derives the following facts surrounding Petitioner's criminal conviction from the transcript of Petitioner's trial. In 2006, Petitioner lived with Jasmine Hill, the mother of his child, several nights a week. Hill was on probation at the time. In December 2006, Petitioner and Hill got into an argument and Petitioner hit Hill with a pistol. When probation officers searched Hill's home, they found three handguns.

On March 20, 2007, Hill attended a class at Lifeworks Center as part of her conditions of probation. She drove to the class in a car that Petitioner had given to her. She brought her four-month-old child with her. While Hill was in class, Petitioner called Hill on her cell phone and told her that he was on his way to meet her and he wanted her to come outside. Petitioner was upset because Hill had told someone about the incident when Petitioner had hit Hill with a pistol. Hill left her baby with a classmate and went outside to meet Petitioner.

When Petitioner arrived, he yelled at Hill and asked for the keys to her car. Hill told him that she had left the keys in the classroom. Petitioner then opened the hood to Hill's car and removed some fuses and tossed them onto the passenger seat of his car. When Hill went to retrieve the car parts from Petitioner's car, he pushed her into the back seat of Petitioner's car and started driving away. Hill yelled at him that she needed to go back for her baby and climbed into the passenger seat of the car. She tried to stop the car by moving the gear shift, but Petitioner hit her. Hill was crying and asking Petitioner to take her back to her daughter. Hill and Petitioner fought inside the car and Hill remembered that Petitioner kept a knife under the passenger's seat. She pulled out the knife and cut Petitioner's face. Petitioner dialed 911. Hill then got out of the car and ran back towards her class, but Petitioner followed in his car, saying that she would go to jail and lose her baby because she had cut him. Hill also called 911. At first, Hill did not reach a 911 dispatcher, but a dispatcher soon returned Hill's call. A passing driver gave Hill a ride back to Lifeworks.

The receptionist at Lifeworks testified that she had seen Petitioner's car drive by earlier but did not see it return. At some point, one of Hill's classmates had come out to check on Hill because Hill had left her baby in the classroom. The receptionist looked for Hill and noticed that the driver-side door to Hill's car was open, but Hill was not there. Later, the receptionist saw Hill

running back to Lifeworks and let Hill enter the building to get her baby. Petitioner returned to Lifeworks shortly thereafter with a bleeding gash on his face.

A grand jury indicted Petitioner for second degree assault and unlawful use of a firearm based on the December 2006 incident as well as three counts of being a felon in possession of a firearm for the three handguns found in his home. The grand jury also indicted Petitioner for first and second degree kidnapping and assault in the fourth degree based on the March 2007 incident.

The case was tried to a jury. Petitioner argued that Hill had fabricated the incidents because she wanted him "out of the picture" and had shifted the blame to Petitioner out of fear of the repercussions of her own actions. Petitioner and Petitioner's ex-wife both testified that the ex-wife had been with them in the car and Hill had gotten into Petitioner's car voluntarily and then attacked Petitioner. Petitioner's ex-wife testified that the three of them had driven around the block to talk, but Petitioner testified that the car did not leave the parking lot. The jury convicted Petitioner of kidnapping in the first degree, kidnapping in the second degree, assault in the fourth degree, and two counts of being a felon in possession of a firearm. The trial court imposed a total sentence of 270 months.

Petitioner appealed to the Oregon Court of Appeals, which affirmed without opinion and the Oregon Supreme Court, which denied review. He then petitioned for post-conviction relief ("PCR"). The PCR court denied relief. Petitioner appealed to the Oregon Court of Appeals, and, when unsuccessful, to the Oregon Supreme Court, which denied review.

In preparation for Petitioner's federal habeas corpus petition, his counsel and an investigator reached out to Hill. In March 2016, Hill submitted a notarized affidavit attesting that she had fabricated many of the facts surrounding the March 2007 incident. ECF 35. In her affidavit, Hill stated that she willingly got in Petitioner's car and that she and Petitioner drove

away so that they could talk. Hill also stated that she hit Petitioner first and that she knew Petitioner would not cause any danger to her or otherwise harm her. ECF 35 at 3. Hill added that the police, the prosecutor, and people from the Child Services Division had all pressured her into testifying falsely and warned her that she might lose custody of her baby.

The Court originally scheduled an evidentiary hearing to hear Hill's testimony and assess her credibility. Hill, however, was unavailable to testify due unrelated criminal proceedings in California in which Hill was charged with assault. In that matter, a jury found Hill guilty and she is currently serving her sentence in California, making her unavailable to testify. The Court therefore decides this case without the benefit of Hill's testimony in person but aided by the additional written evidence that the parties have submitted.

## DISCUSSION

Petitioner's only claim is that he was denied due process of law under the Fourteenth Amendment of the United States Constitution because his conviction for kidnapping rests on false testimony. He is no longer pursuing any of the claims that he raised in state court. Because Petitioner asserts a claim of actual innocence, his constitutional claim is not procedurally barred, but he must establish that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Larsen*, 742 F.3d at 1088 (quoting *House*, 547 U.S. at 536-37).

Hill's affidavit tells an account of events which, if true, would cast serious doubt on whether Petitioner is guilty of the kidnapping offense. The March 2016 affidavit is the first time that Hill has asserted that Petitioner did not kidnap her. Hill's testimony at trial told a very different story. Hill's trial testimony was consistent with the statements she made in her 911 call, statements she made to police officers on the day of the incident, and statements she made to police officers throughout the investigation. ECF 46-1. The consistent accounts that Hill gave on

the 911 call and to police officers on the day of the incident pre-date any charges being filed against Petitioner and pre-date any prosecutorial involvement. Thus, it is unlikely that the version of events that Hill provided in the 911 call was the result of any pressure from prosecutors or police.

Hill's testimony that she did not get into the car voluntarily also accords with other details in the record, such as the fact that the driver's side door to her car was left open and she left her four-month-old baby in the classroom. Furthermore, Hill's affidavit is inconsistent with Petitioner's account of the incident. At trial, Petitioner testified that he did not drive his car during the altercation, other than moving it a few feet in the parking lot, but in her affidavit, Hill states that she voluntarily got in Petitioner's car and they drove off together.

The affidavit that Hill submitted in this case is not the first affidavit that she submitted on behalf of Petitioner. Before the trial, Hill signed an affidavit stating that the handguns in their home in December 2006 belonged to Petitioner's son, and not Petitioner. Ex. 120. That affidavit contradicted Hill's earlier statements to the police. At trial, however, Hill testified that she only signed the affidavit because she was concerned for her own safety. ECF 20-1 at 271-72.

Petitioner and Hill eventually reconnected and, beginning in February 2015, Petitioner and Hill spoke on the phone for hours at a time on a near-daily basis. *See* ECF 87-1. Hill provided Petitioner with money for his pre-paid telephone account and sent hundreds of dollars to Petitioner's prison trust account. ECF 87-1. During one telephone call in February 2015, Petitioner told Hill to "tell the truth" about the 2007 incident and say that "I didn't put you in my car. That you got in." ECF 87-1 at 91. When Hill asked Petitioner if he was getting out of prison soon, he responded, "Well, that depends on you." *Id.*

During Hill's recent trial on an unrelated assault charge in California, Hill was asked about the affidavit that she submitted in this case. Hill testified that Petitioner had been abusive, and that she had felt the same feelings of fear towards Petitioner that she had felt towards her more recent boyfriend, whom she was charged with assaulting. ECF 82-1 at 53. When asked why she had signed "a document which took back statements of abuse," she responded that she was "just confused." ECF 82-1 at 72-73. Explaining why she had signed the affidavit, Hill explained that it was "so [her] daughter can have a relationship with her father." *Id*. at 73.

On cross-examination, the government's attorney asked Hill about the affidavit:

> Q: So were you lying when the father of your daughter was charged with domestic violence then or are you lying now when you signed an affidavit saying it was different?
>
> A: I wouldn't say lying. I would say I was down playing my situation in what happened to me when I signed it. Yes Ma'am. When I signed it, yes.
>
> Q: Yes, you did lie when you signed that affidavit?
>
> A: I did downplay what happened to me, yes, ma'am.

ECF 82-1 at 90-91.

The Court cannot conclude that no reasonable juror could have chosen to believe the version of events that Hill testified to at trial, even when also considering the new evidence. Hill's trial testimony was consistent with her statements in the 911 call and the statements made to police officers on the day of the incident, the day after the incident, and throughout the investigation. Additionally, the version of events in Hill's affidavit is inconsistent with Petitioner's testimony of the incident at trial. Although Hill claims that she felt pressure from the Child Services Division and the police and the prosecutors to give false testimony against Petitioner, Hill's initial account of the incident, from the 911 call, pre-dated any opportunity for improper influence.

Based on Hill's credibility issues, as well as her re-kindled relationship with Petitioner in 2015, a juror could conclude that the 2016 affidavit was untrue. Hill's testimony at her own criminal trial came close to confirming that the 2016 affidavit was not an accurate description of the incident. In short, a reasonable juror could disbelieve Hill's affidavit. Accordingly, Petitioner has not carried his burden to show that no reasonable juror, in light of Hill's affidavit, could find Petitioner guilty beyond a reasonable doubt.

## CONCLUSION

The Amended Petition for Habeas Corpus (ECF 37) is denied. Defendant's Motion to Strike (ECF 57) is denied as moot. The Court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

DATED this 20th day of September, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge